# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 11** |
| **JODY L. KEENER,** | ) | |
| | ) | **Bankruptcy No. 14-01169** |
| Debtor. | ) | |
| | ) | |
| **JODY L. KEENER,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary No. 14-09061** |
| | ) | |
| v. | ) | |
| | ) | |
| **SUPER WINGS** | ) | |
| **INTERNATIONAL, LIMITED** | ) | |
| | ) | |
| Defendant. | ) | |

## RULING RE: MOTION TO DISMISS COMBINED WITH OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendant Super Wings International, Limited filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment on this adversary proceeding. Debtor brought this adversary to compel Super Wings to turnover property that allegedly belongs to the bankruptcy estate. The Court held a hearing on the motions in Cedar Rapids, Iowa on November 19, 2014. Jeff Goetz appeared on Debtor's behalf, and Eric Lam appeared on Super Wings' behalf. The parties agreed to forego oral arguments and rely on previously submitted briefs. The

Court took the matter under advisement.  This is a core proceeding under

28 U.S.C. § 157(b)(2)(E).

## STATEMENT OF THE CASE

Debtor argues that Super Wings has failed to turnover bankruptcy estate

property in violation of 11 U.S.C. § 542.  Super Wings moved to dismiss or for

summary judgment supported by three theories.  First, Super Wings argues that

Debtor acquired rights in the disputed property through a transfer that violated the

automatic stay and is thus void.  Second, Super Wings argues that claim

preclusion, issue preclusion, or res judicata prevents Debtor's assertion of his

rights in the disputed property.  Finally, Super Wings claims that Debtor

orchestrated the transfer to inappropriately "manufacture" jurisdiction in violation

of 28 U.S.C. § 1359.

Debtor argues that the disputed transfer is valid under 11 U.S.C. § 303 and

does not violate the automatic stay as recognized in § 362(a)(3).  Debtor also

argues that prior proceedings have no preclusive effect because they addressed

different facts and issues.  Debtor also argues that the state court lawsuit and

assignment made under its default judgment did not improperly manufacture

jurisdiction under 28 U.S.C. § 1359.

The Court finds that while many of Super Wings' arguments have strong

appeal, the underlying factual record is not clear on some key points.  The Court

denies the Motion to Dismiss and Motion for Summary Judgment, without

prejudice, and sets this matter for an evidentiary hearing on the unclear factual

issues.

## STATEMENT OF FACTS

These proceedings began on July 30, 2013, when three creditors filed an

involuntary Chapter 7 petition against Debtor, Jody Keener.  On July 28, 2014,

while the involuntary petition was still pending, Debtor filed a voluntary Chapter

11 bankruptcy.  The case continues in the voluntary proceeding while further

decisions in the involuntary proceeding have been stayed.

Debtor has filed as an individual.  He is the sole shareholder, director, and

officer of J. Lloyd International, Corp. ("JLI").  JLI is an Iowa corporation that is

in the toy manufacturing and distributing business.  Debtor is or was also involved

in several other toy companies, including K&K Toy and Novelty, and Alpha

International, Inc.

Defendant, Super Wings, is a marketing company located in Hong Kong,

China.  Super Wings takes purchase orders from customers and then contacts a

factory in China to arrange the production.  Super Wings does not manufacture

toys, but Super Wings' owner, Tim Yip, also owns factories that manufacture toys.

Super Wings occasionally contracts with Tim Yip's other companies to

manufacture toys.

JLI interacted with Super Wings to buy and sell toys.  They shared a lucrative business relationship.  Eventually one of Super Wings' associates, Dora Yip, became a 50% shareholder of JLI.  Dora Yip, also known as Wai Har Yip, is Tim Yip's sister.  The relationship between Dora Yip and JLI deteriorated, and the parties agreed to separate.  As part of the separation, Super Wings agreed to return to JLI certain assets, including tooling, equipment, and toy molds that it held in storage (the "disputed property").  Debtor reacquired Yip's interest in JLI for a $2 million promissory note.[1]

Debtor estimates that the disputed property is worth approximately $15 million.  Debtor planned to use the disputed property at JLI to generate revenue to fulfill his personal obligations under the $2 million promissory note.  Debtor eventually defaulted on the promissory note.  Super Wings sued in the United States District Court for the Northern District of Iowa.  JLI filed a motion to intervene in the action and requested a judgment for it against Super Wings. Super Wings Int'l, Ltd. v. Keener, No. C09-0115, 2012 WL 252638 (N.D. Iowa 2012), aff'd 701 F.3d 870 (8th Cir. 2012).

The conflict in the District Court centered on the disputed property.  The parties agreed that JLI's representative picked up some of the disputed property, but additional property remained in Super Wings' possession.  In that case, Debtor

---

[1] The separation agreement contains additional terms, but those terms are not relevant here.

argued that the promissory note he provided to Super Wings was invalid for lack of

consideration.  Debtor and JLI also argued that Super Wings inappropriately

retained the disputed property.  They argued that when Super Wings retained the

property, that action violated a requirement under the separation agreement.

Debtor thus argued that he was not obligated to pay on the promissory note.

The District Court concluded that Debtor's arguments lacked merit and

entered a judgment for $2 million in Super Wings' favor.  The court also

concluded that JLI's intervention petition was without merit because "JLI failed to

prove that Super Wings has refused to release the molds and tooling identified in

the agreement."  Id. at *13.  The Court recognized that the disputed property still

belonged to JLI, regardless of where it was located.  The District Court stated:

"The Court notes parenthetically, however, that JLI may still obtain the molds and

tooling by providing Super Wings with appropriate notice regarding the specific

molds and tooling to be released, together with the identification of the party

authorized to receive the same."  Id.  The District Court seemed to conclude that

JLI had the burden of picking up the property and for the cost of shipping.  The

Eighth Circuit Court of Appeals affirmed the District Court's ruling.

After the involuntary bankruptcy filing, Debtor sued JLI, the company he

owns, in Linn County in the case of Jody Keener v. J. Lloyd International, Inc, No.

LACV 71352.  On February 14, 2014, a default judgment was entered in that case.

Debtor appeared with his attorney at the default proceeding.  No one appeared on

JLI's behalf.  The judgment that Debtor personally received against JLI totaled

$5,814,840.00.  The record does not indicate the factual basis for this suit, if any.

On March 31, 2014, JLI assigned the disputed property to Debtor in return for a

$1,000,000 release from the default judgment (the "Assignment").

Debtor then filed this adversary seeking to compel Super Wings, Defendent

here, to turn over the disputed property to Debtor because he now had the rights to

it under the Assignment.  Debtor argues that the disputed property is part of the

bankruptcy estate.  Super Wings, the Defendant, resists this contention and filed

the motion for summary judgment or motion to dismiss that is at issue here.

## DISCUSSION

Super Wings' dispositive Motions rely on three theories.  First, Super Wings

argues that the Assignment violated the automatic stay and is therefore void *ab*

*initio*.  Second, Super Wings argues that this issue has already been litigated in the

District Court, so res judicata, issue preclusion, or claim preclusion prevent Debtor

from asserting any rights in the disputed property.  Third, Super Wings argues that

this Court lacks subject matter jurisdiction because Debtor inappropriately

"manufactured" jurisdiction.  The Court will address these arguments in the order

they have been presented.

## I.   Standard for a Motion to Dismiss and Motion for Summary Judgment

Super Wings argues that this adversary should be dismissed based on Federal Rule of Bankruptcy Procedure 7012(b)(6) and (b)(1).  Bankruptcy Rule 7012 states: "Rule 12(b)–(i) F.R. Civ. P. applies in adversary proceedings."  In addition, "[t]he Bankruptcy Rules follow the Federal Rules of Civil Procedure standards for dismissal and requirements for pleading."  Sergeant v. OneWest Bank, FSB (In re Walter), 462 B.R. 698, 703 (Bankr. N.D. Iowa 2011).  Dismissal under 7012(b)(6) requires Super Wings to assert that Debtor has "fail[ed] to state a claim upon which relief can be granted."

"In order to determine whether a complaint states a 'claim upon which relief can be granted,' courts look to what a party is required to plead."  In re Walter, 462 B.R. at 703.  Bankruptcy Rule 7008(a) sets out the pleading requirements and makes Federal Rule of Civil Procedure 8 applicable in adversary proceedings.  Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court has stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Therefore, in order to evaluate Super

Wings' Motion to Dismiss, the Court must assess whether Debtor's factual

assertions, when accepted as true, entitle Debtor to relief.

In the alternative, Super Wings argues that the Court should grant summary

judgment. The court shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movement is entitled to

judgment as a matter of law." Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56

to adversary proceedings). Substantive law determines which facts are material.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material fact

dispute is one that "might affect the outcome of the suit." Id. An issue is genuine

when reasonable minds could differ as to the verdict of the case because of that

issue. Id. at 251–52 (explaining that the facts cannot be "so one-sided that one

party must prevail as a matter of law").

At this point in the litigation, "the judge's function is not himself to weigh

the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial." Id. at 249. The Court will view the facts and make "all

reasonable inferences in the light most favorable to the nonmoving party." Reed v.

City of St. Charles, Mo, 561 F.3d 788, 790 (8th Cir. 2009).

## II.   Whether the Assignment Violated § 362(a)(3) or was allowed by § 303(f)

Super Wings asserts that the Assignment by which Debtor acquired the

disputed property violated the automatic stay. Super Wings argued that the

8

Assignment is a transaction that occurred without the Court's permission after the involuntary bankruptcy filing, and, specifically, an exercise of control over property of the estate by the Debtor in violation of 11 U.S.C. § 362(a)(3). Debtor argues that because this bankruptcy was filed at as an involuntary proceeding, 11 U.S.C. § 303(f) applies in this case. He argues that section gives him the right to continue "to use, **acquire**, or dispose of property," and therefore the Assignment was proper.

Both parties agree that the automatic stay under 11 U.S.C. § 362(a) became effective as of the date of the involuntary petition on July 30, 2013.[2] They also seem to agree that the Assignment is a transfer within the meaning of 11 U.S.C. § 101(54). They disagree about whether § 303(f) or § 362(a)(3) applies and controls in this situation.

### a. The Automatic Stay and § 362(a)(3)

The bankruptcy estate is created at the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1) (2013). Property of the estate includes all of debtor's legal rights, including causes of action and resulting judgments. Id.; see also Mixon v. Anderson (In re Ozark Restaurant Equip. Co, Inc.), 816 F.2d 1222, 1225

---

[2] Because the parties agree that the automatic stay began when the involuntary petition was filed, the Court declines to address whether the involuntary petition date or the voluntary petition date should apply to any other look-back period determinations. The rationale stated in this opinion applies only to the extent of the application of the automatic stay.

(8th Cir. 1987) (explaining that causes of actions are part of the bankruptcy estate);

In re Huges, 318 B.R. 704, 706 (Bankr. W.D. Mo. 2004) (holding that an annuity

payment as part of a settlement in a personal injury case was property of the

estate).

Section 362(a) provides extensive debtor protections by staying many

activities involving property of the estate.  11 U.S.C. § 362(a).  It also provides

creditors protections by ensuring that the debtor will not dissipate estate assets.

See Canadian Imperial Bank of Commerce v. Okla. P.A.C. First Ltd. P'ship (In re

Okla. P.A.C. First Ltd. P'ship), 122 B.R. 394, 402 (Bankr. D. Ariz. 1990)

(explaining that § 541and § 362 are read together to give creditors protection from

dissipation of assets).  Petitions brought under § 303 have the benefit of the

automatic stay.  Id.  The automatic stay extends to "any act . . . to exercise control

over property of the estate."  Id. § 362(a)(3).  Transactions that violate the

automatic stay are void.  LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317, 325

(B.A.P. 8th Cir. 1999) ("We . . . align ourselves with the majority position.  We

hold that an action taken in violation of the automatic stay is void *ab initio*.").

Here, for purposes of the automatic stay, the parties largely do not dispute

that the bankruptcy estate arose as of July 30, 2013, the date on which creditors

filed the involuntary petition against Debtor.  As of July 30, 2013, Debtor had a

judgment against JLI for $5,814,840.00, so that judgment must be property of the

estate.  On March 31, 2014, Debtor partially released the judgment against JLI in

exchange for title to the disputed property.  This transaction allowed Debtor to

"exercise control over property of the estate."  Debtor did not obtain Court

approval for this transaction.  The Debtor did not request that the Court modify the

automatic stay before engaging in this transaction.  As such, the Assignment

appears on its face to be a violation of § 362(a)(3).  Debtor argues, however, that

even if Debtor would otherwise had violated the automatic stay, the Assignment is

allowed under § 303(f).

### b.  Section 303(f)

Debtor argues that because this case was filed as an involuntary, § 303(f)

applies.  He argues that § 303(f) allows the debtor to use or dispose of his property

as long as the Court has not granted an order for relief or issued an order

disallowing Debtor's use of the property.

Section 303(f) specifically states "the debtor may continue to use, acquire, or

dispose of property as if an involuntary case concerning the debtor had not been

commenced."  At least one court has explained that "[t]he rationale for allowing

the debtor to operate during the involuntary gap period is that prior to the entry of

an order for relief, the subject of an involuntary petition should not be adversely

affected by the case."  Consol. Partners Inv. Co. v. Lake (In re Consol. Partners

Inv. Co.), 152 B.R. 485, 490 (Bankr. N.D. Ohio 1993).  Additionally, unlike

voluntary petitions—where the petition and the order for relief are granted at the same time—there is a higher likelihood that the order for relief may not be granted in a petition brought under § 303.  See 11 U.S.C. § 303(h).

Super Wings argues that § 303(f) was not meant to trump § 362, and Debtor's argument is flawed.  The question presented is whether § 303(f) applies as Debtor argues.  This is a difficult question that has not been clarified in case law.

Section 303(f) specifically states that § 363 does not apply during the involuntary "gap" period.[3]  However, § 303(f) only references § 363; it does not specifically state that any other provision of the Bankruptcy Code is affected.  Because § 303(f) does not reference § 362, there is some debate regarding whether § 362 applies during the gap period, and whether it would limit the debtor's activities.  Compare In re Acelor, 169 B.R. 764 (Bankr. S.D. Fla. 1994) (explaining that the automatic stay is not effective until the order for relief in involuntary bankruptcy filings), with In re Flores, 291 B.R. 44 (Bankr. S.D.N.Y. 2003) (explaining that the automatic stay is effective upon the filing of bankruptcy, regardless of whether it is involuntary).  See also Hanrahan v. Walterman (In re Walterman), Bankr. No. 05-07284, Adv. No. 06-9067, 2006 WL 156401, at *2 (Bankr. N.D. Iowa May 22, 2006) ("A petition filed under § 303 operates as a stay

---

[3] The "gap" period is the period between the involuntary bankruptcy filing and the order for relief.

of any act 'to exercise control over the property of the estate.'" (citing 11 U.S.C.

§ 362(a)(3))).  Nonetheless, as noted previously, § 362(a) specifically states that

the automatic stay goes into effect when the petition is filed under § 303.  Section

303 itself bolsters this notion by stating "[a]n involuntary case against a person is

commenced by the filing with the bankruptcy court of a petition under chapter 7 or

11 of this title . . ." 11 U.S.C. § 303(b); see also Ostrander v. Gardner (In re

Millivision, Inc.), 331 B.R. 515, 523 (Bankr. D. Mass. 2005).  Collier on

Bankruptcy concludes:

> The automatic stay of section 362(a) comes into effect upon the filing
> of a petition under section 303, just as it does when a voluntary
> petition is filed.  This approach comports with the wording of section
> 362, which specifically refers to section 303.  Although a few courts
> have taken the position that the stay is only effective once the order
> for relief is entered, this position is not supported by the language of
> section 303.  The only correct conclusion, given the wording of
> section 362, is that section 362 applies during the gap period, thus
> preventing prepetition creditors from collecting from the debtor.  This
> is the best way of insuring that an involuntary filing does not harm the
> debtor while this matter is sorted out.

2 Collier on Bankruptcy § 303.23[1] (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2012) (footnotes omitted).

It is important to note that the automatic stay applies to "all entities."  11

U.S.C. § 362(a).  It not only protects the debtor, it also protects the creditors.  In re

Flores, 291 B.R. 44, 50 (Bankr. S.D.N.Y. 2003); see also Armco Inc. v. N. Atl. Ins.

Co. Ltd. (In re Bird), 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999) ("The automatic stay

is designed to offer the debtor repose from his or her creditors' collection efforts, to protect creditors from each other, and to insure an orderly liquidation or administration of the estate."). "The automatic stay is one of the most vital protections of the bankruptcy system. As such, courts have given a broad interpretation to the scope of the stay." Shaw v. Ehrlich, 294 B.R. 260, 267 (W.D. Va. 2003) (citation omitted).

At least one court has noted that "[s]ection 303(f) refers to an involuntary debtor using its property to carry on its business. It does not address the creditor taking the property." Bankvest Capital Corp. v. Fleet Boston (In re Bankvest Capital Corp.), 276 B.R. 12, 25 (Bankr. D. Mass. 2002), vacated sub. nom. Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.), Bankr. No. 99-47760-JBR, Adv. No. 01-4387, 2003 WL 1700978 (D. Mass. Mar. 28, 2003), aff'd 375 F.3d 51 (1st Cir. 2004). However, the proposition that a gap debtor could pay a pre-petition creditor without violating the automatic stay, but the creditor that accepts payment would be in violation of the automatic stay, seems illogical. See 2 Collier on Bankruptcy § 303.23[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) ("[T]he debtor operates as if there were no bankruptcy, but creditors may be unwilling to deal with the debtor on this basis since they are subjected to the stay.").

While §§ 303(f) and 362 can be viewed in conflict with one another when applied to debtor-initiated transactions, the Court need not resolve that conflict here. The applicable facts in this case are either disputed or unclear.

The reason and factual basis for the suit by Debtor against the company he owns, JLI, is entirely unclear from this record. On the one hand, Debtor claims to be in a lawsuit with his company to gain control over property that is rightfully his. On the other hand, the lawsuit appears to be entirely without a basis in fact other than to improperly move assets from JLI to the Debtor simply for the ease of administration. Debtor's attorney implied as much at the § 341 examination:

> And that had to do with the Super Wings not recognizing the automatic stay in the Chapter – in the involuntary and their threat to dispose of it. So to bring all of that property into the protection of the automatic stay in the involuntary, there was a transaction . . . . And so now that it is, in fact, property of the bankruptcy estate, there's an assurance that it can't be liquidated, because there has been a threat of selling it for scrap.

Super Wings' Reply, Docket Item 22, 341 Transcript at 61. There are conflicting messages in the existing factual record on whether this could really be the type of case § 303(f) meant to cover where "the business of the debtor" needed to "continue to operate" and in doing so was using, acquiring, or disposing "of property as if an involuntary case concerning [him] had not been commenced." 11 U.S.C. § 303(f).

15

The Court does not believe Debtor has made a sufficient showing that § 303(f) was meant to apply to this type of case. Because Debtor has submitted this on paper, accompanied by a request to present evidence of the validity of the State Court lawsuit, the Court will set a brief evidentiary hearing for that purpose. Thus, neither summary judgment nor dismissal is appropriate in this case.

### III.    Issue or Claim Preclusion

Super Wings argues for dismissal based on issue preclusion and for claim preclusion. Debtor argues that this issue was fully litigated in the United States District Court for the Northern District of Iowa. On January 25, 2012, the District Court dismissed JLI's claim for damages and turnover of the molds from Super Wings. The decision was affirmed by a unanimous United States Court of Appeals for the Eighth Circuit. As such, Super Wings argues that JLI would be barred from asserting the same claim in the future. Super Wings argues that if JLI is precluded from asserting such a claim, Debtor must also be barred because, at best, he took only JLI's rights.

Debtor argues that his motion is for turnover of property under § 542 of the Bankruptcy Code. Debtor explains that this issue could not have been litigated previously because it is a request that specifically applies only under the Bankruptcy Code.

The doctrine of res judicata includes five elements: 1) there was a final judgment on the merits of the case; 2) proper jurisdiction existed in the first suit; 3) both suits involved the same parties or others in privity with those parties; 4) both cases involve the same causes of actions or claims; and 5) the party against whom res judicata is alleged had a full and fair opportunity to litigate the claim. Rutherford v. Kessel, 560 F.3d 874, 877 (8th Cir. 2009). Where the claim involves a core bankruptcy matter, it cannot be barred by res judicata based on a state law claim. See Randa Coal Co. v. Va. Iron Coal & Coke Co. (In re Rand Coal Co.), 128 B.R. 421, 426 (W.D. Va. 1991).

Again, the Court cannot rule on this issue on the record before it. The District Court certainly issued a final decision that should be given preclusive effect if it applies to these facts. The problem for the Court here is whether the facts are the same presented to the District Court. The District Court ruled that JLI had no claim against Super Wings for wrongfully withholding the molds and other equipment because JLI had not shown it made a specific demand for particular items that Super Wings held. The District Court noted that JLI still had a right to possession of the molds if it made the properly framed and sufficiently specific request for that property.

The record before the Court remains unclear whether JLI ever attempted to make such a request, or whether Debtor is simply attempting to assert that right

based on the same record before the District Court. The parties have informed the

Court that they had discussed resolution of the matter, but not whether such a

specific demand, as set forth by the District Court, was ever provided.

Based on the lack of clarity in the factual record, the Court cannot properly

decide the preclusion arguments at this time.

### IV.    Subject Matter Jurisdiction

Super Wings also argues that the Court does not have subject matter

jurisdiction under 28 U.S.C. § 1359. Section 1359 states: "A district court shall

not have jurisdiction of a civil action in which any part, by assignment or

otherwise, has been improperly or collusively made or joined to invoke the

jurisdiction of such court." Super Wings argues that this Court does not have

subject matter jurisdiction because the Assignment invalidly "manufactured"

jurisdiction, which violates 28 U.S.C. § 1359. In response, Debtor argues that

§ 1359 may not apply to bankruptcy cases, and even if it does, the Assignment was

proper and did not violate § 1359.

### a.  28 U.S.C. § 1359 Applies to this Bankruptcy Case

Debtor first argues that 28 U.S.C. § 1359 may not apply in bankruptcy cases.

Based on the reading of the jurisdictional provisions and § 1359's underling policy,

the Court cannot agree with Debtor's argument.

A bankruptcy court is granted its jurisdiction through several provisions of the Bankruptcy Code. 28 U.S.C. § 1334 (2013); see also 28 U.S.C. § 151. Section 151 describes the bankruptcy courts as "a unit of the district court." As a unit of the district court, the bankruptcy court cannot have powers that the district would not have. Section 1359 specifically prohibits jurisdiction where jurisdiction is "manufactured," and if this prohibition affects the district court, then it should also affect the bankruptcy court.

The policy behind § 1359 also supports the conclusion that it must apply to bankruptcy courts. The original purpose behind § 1359 was "to prevent the manufacture of Federal jurisdiction by the device of assignment." Kramer v. Caribbean Mills, Inc., 394 U.S. 523, 826 (1969) (quoting § 1359's legislative history) (internal quotation marks omitted). Presumably, the statute was intended to keep out collusive cases even where the assignment may be valid under state law. See id. at 830 ("[T]his very case demonstrates the ease with which a party may 'manufacture' federal jurisdiction by an assignment which meets the requirements of state law.").

A bankruptcy court is still a federal court. The same rational would thus apply. Bankruptcy courts should not deal with state issues that have been improperly, albeit creatively, interjected in the bankruptcy estate. Another court aptly pointed out, "[a]pparently Section 1359 has thus far only been invoked in the

context of diversity jurisdiction.  However, the language of the statute broadly

addresses the jurisdiction of the district court.  Certainly, the policy behind the

statute is to prevent the manufacture of federal jurisdiction through assignment."

Maislin Indus., U.S., Inc. v. C.J. Van Houten E Zoon, Inc., (In re Maislin Indus.,

U.S., Inc.), 66 B.R. 614, 617 (E.D. Mich. 1986).[4]

### b. Burden

Defendent must prove the subject matter jurisdiction defense.  Kokkonen v.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  However, the burden

shifts to the plaintiff, Debtor in this case, to show that the type of assignment it

made here is not collusive.  W. Farm Credit Bank v. Hamakua Sugar Co., 841 F.

Supp. 976, 981 (D. Haw. 1994); see also Fed. R. Evid. Rule 301.  The Plaintiff-

assignee need only offer evidence that the transfer was made for a "legitimate

business purpose unconnected with the creation of [subject matter] jurisdiction."

Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 476 (2d Cir. 1976).

"Courts do not rely on any single factor to determine whether an assignment was

designed to manufacture federal jurisdiction, but instead consider the totality of the

---

[4] It is important to note that this Court is not the first bankruptcy court to address this issue.  See, e.g., In re Longview Power, LLC, 516 B.R. 282 (Bankr. D. Del. 2014) (finding no need to decide the issue); Premium of Am., LLC v. Sanchez (In re Premium Escrow Servs., Inc.), 342 B.R. 390 (Bankr. D.C. 2006) (declining to decide the issue); Gynor v. Healthshield Capital Corp. (In re Gynor), 251 B.R. 344 (Bankr. N.D. Ill. 2000) (applying § 1359 in the bankruptcy context); Bicoastal Corp. v. Semi-Tech Microelectroincis (Far East), Ltd. (In re Bicoastal Corp.), 130 B.R. 597 (Bankr. M.D. Fla. 1991) (finding no need to decide the issue).

circumstances." Airlines Reporting Corp. v. S&N Travel, Inc., 857 F. Supp. 1043, 1048 (E.D.N.Y. 1994), aff'd 58 F.3d 857 (2d Cir. 1995); see also Nat'l Fitness Holdings, Inc. v. Grand View Corporate Ctr., LLC, 749 F.3d 1202, 1205 (10th Cir. 2014) (providing a list of factors with citations). It is a fact-intensive analysis. See, e.g., Nat'l Fitness Holdings,749 F.3d at 1206.

Courts generally apply heightened scrutiny to jurisdiction created by assignments, like the one here, between a corporation and one of its directors or officers. See e.g., McCulloch v. Velez, 364 F.3d 1, 6 (1st Cir. 2004); Airlines Reporting Corp., 58 F.3d at 862–63; Yokeno v. Mafnas, 973 F.2d 803, 809–10 (9th Cir. 1992); Patel v. Patel, No. 4:14-CV-117, 2014 WL 5025821, *2 (S.D. Ga. Oct. 7, 2014); Reinhart Oil & Gas v. Excel Directional Techs., LLC, 463 F. Supp. 2d 1240, 1250 (D. Colo. 2006); see also Nat'l Fitness Holdings, 749 F.3d at 1208 n. 2 (noting that there is a circuit split on whether there is a presumption of impropriety in certain transactions with close relationships).

Here, the Assignment occurred between Debtor and a company in which Debtor has complete control. Debtor exchanged property that is allegedly worth $15 million for release of $1 million judgment, which was only a portion of the total judgment. When asked about the Assignment at the § 341 meeting, Debtor's counsel stated:

> And that had to do with the Super Wings not recognizing the automatic stay in the Chapter—in the involuntary and their threat to

21

dispose of it.  So to bring all of that property into the protection of the automatic stay in the involuntary, there was a transaction. . . . And so now that it is, in fact, property of the estate, there's an assurance that it can't be liquidated, because there had been a threat of selling it for scrap.

This statement and several other factors leave this Court with great suspicion that this Assignment and the suit underlying it may not have had any business purpose, let alone a legitimate business purpose.  However, given that this inquiry is meant to be fact-intensive, and that Debtor has requested an opportunity to present facts in support of this very issue, this Court will withhold ruling until Debtor has that opportunity.

**WHEREFORE**, Super Wings' Motion to Dismiss or for Summary Judgment is denied without prejudice to its renewal upon completion of the evidentiary hearing in the above issues.

Dated and Entered:

April 16, 2015

**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**